FILED

2012 Jun-26  AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LISA ANN NORRIS,            ]
Plaintiff,                  ]
                            ]
        vs.                 ]   2:11-CV-1552-LSC
                            ]
MICHAEL J. ASTRUE,          ]
Commissioner of Social Security   ]
Defendant.                  ]

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Lisa Ann Norris, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Norris timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Norris was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has an eleventh grade education. (Tr. at 69.) Her past work experiences include employment as a mail clerk, overnight stocker, production worker, and cashier. (Tr. at 23-34.) Ms. Norris claims that she became

disabled on August 1, 2006, due to low back pain, hypertension, and schizophrenia/bipolar disorder (Tr. at 69.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Ms. Norris meets the nondisability requirements for a period of disability and DIB, and was insured through the date of this decision. (Tr. at 16.) He further determined that Ms. Norris has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id*.) According to the ALJ, Plaintiff's depressive disorder, anxiety disorder, cannabis abuse, and cocaine abuse are considered more than minimal

work-related limitations based on the requirements set forth in the regulations.  (*Id.*)
However, he found that these impairments neither meet nor medically equal any of
the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (Tr. at 18.)  The
ALJ did not find Ms. Norris's allegations to be totally credible, and he determined that
she has the following residual functional capacity: full range of work at all exertion
levels and has no more than moderate limitations in her ability to perform basic mental
requirements.  (Tr. at 19.)

According to the ALJ, Ms. Norris is able to perform some of her past relevant
work, she is a "younger individual," and she has "at least the equivalent of a high
school education" as those terms are defined by the regulations.  (Tr. at 23.)  He
determined that Plaintiff has "no transferable skills from any past relevant work
and/or transferability of skills is not an issue in this case."  (*Id.*)  The ALJ found that
Ms. Norris has the residual functional capacity to perform a full range of work at all
exertion levels and has no more than moderate limitations in her ability to perform the
basic mental work requirements.  (Tr. at 19.) The ALJ concluded his findings by
stating that Plaintiff "was not under a 'disability,' as defined in the Social Security
Act, at any time through the date of this decision."  (*Id.*)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Norris alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes the ALJ used an improper standard when assigning weight to Plaintiff's examining psychologist, Dr. Rogers. (Doc. 8 at 13.) Second, she claims that the ALJ did not give adequate weight to Dr. Rogers as compared to Plaintiff's other physicians. (Doc. 8 at 13.)

The ALJ may discount the opinion of a physician, even a treating physician, for good cause. "Good cause" exists for an ALJ to give a physician's opinion no substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F. 3d 1232, 1241 (11th Cir. 2004) citing *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," however, the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-419 (11th Cir. 2006) (citing *Blooksworth v. Heckler*, 703 F. 2d 1233, 1240 (11th Cir. 1983). Moreover, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F. 2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F. 2d 619, 623 (11th Cir. 1986)). The weight accorded to a medical opinion regarding the nature and severity of claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 416.927(d). When the ALJ gives little weight to a physician's opinion, he must give his reasons and while "particular phrases or formulations" do not have to be cited in an ALJ's credibility determination, it cannot be a "broad rejection" which is "not enough to enable [this Court] to conclude that [the ALJ] considered her [Plaintiff's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1555, 1562 (11th Cir. 1995)).

The ALJ did not believe Plaintiff was "completely forthright during [Dr.

Rogers'] evaluation" and stated specific reasons in his report for finding the Plaintiff was not credible. (Tr. at 18-23.) The ALJ gave no significant weight to Dr. Rogers' opinion for two reasons: (1) Plaintiff's statements to Dr. Rogers were not reliable because they were drastically different as compared to previous statements the Plaintiff made to past physicians and (2) Dr. Rogers' opinion is not supported by any additional evidence. (Tr. at 18.) The ALJ had good cause to afford the opinion of Dr. Rogers no significant weight.

Plaintiff had her first psychological consultative examination (CE) with Dr. Beth on November 21, 2006. (Tr. at 172-77.) Dr. Beth concluded Plaintiff had a mild to moderate impairment in her ability to cooperate with others, as well as mild limitations in social functioning, paying attention, concentration, persistence, and pace. (Tr. 176-77.) Her GAF  score was 55, suggesting moderate difficulty in functioning. At Dr. Beth's suggestion, Plaintiff saw Dr. Leonard in December 2006, to get a psychiatric referral. (Tr. at 176.) Dr. Leonard concluded in the Functional Capacity Assessment that the Plaintiff could perform work on a normal schedule with standard breaks. (Tr. 200.) At no point did any treating physician suggest the plaintiff had any work-related limitations. (Tr. at 22-23.)

Because the plaintiff's last CE was more than two years old, Plaintiff's attorney

sent Plaintiff to Dr. Rogers on January 15, 2009, for her second psychological CE. (Doc. 8 at 7.) Dr. Rogers found a range of difficulties that the Plaintiff did not have previously, such as: an inability to maintain social functioning; difficulty in concentrating; an inability to respond under supervised labor; memory difficulties; and limitations in repetitive work. (Tr. at 22.) Dr. Rogers assigned the plaintiff a GAF score of 48, and, although he saw the plaintiff only once, stated that the plaintiff could not have had a higher score than 50 in the last twelve months. (Tr. at 208.)

The Plaintiff gave several statements to Dr. Rogers that were inconsistent with both the medical record and her previous statements. (Tr. at 172-77, 178-82, 184-97, 203-11.) Dr. Rogers' opinions were based primarily on statements made by the plaintiff, which were very different from previous statements, such as the physical pain the plaintiff was experiencing, her drug use, her arrest record, hallucinations, and the length of her marriage, among other things. (Tr. at 20-21.)

For instance, Plaintiff told Dr. Rogers she has never left the state nor been arrested, whereas she told Dr. Beth she lived in California for several years and spent 90 days incarcerated. (Tr. at 200-04, 174.) Plaintiff told Dr. Rogers she goes into "rages" and has anger problems, while in Dr. Beth's report the plaintiff denied any rage problem. (Tr. at 203-04, 175.) Furthermore, her primary care physician, Dr.

Record, has nothing on file to suggest Plaintiff goes into rages or has anger problems. (Tr. at 21.) She told Dr. Rogers she was married for six months. (Tr. at 204.) The same marriage lasted only a month according to Plaintiff's statements to Dr. Beth. (Tr. at 174.)

Given the inconsistencies in Plaintiff's statements, the ALJ focused on evidence that was corroborated by the record. (Tr. at 22.) The opinion of Dr. Rogers was formed primarily from the plaintiff's inconsistent statements. (Tr. at 22.) Therefore, the ALJ gave Dr. Rogers' report no significant weight. (Tr. at 22.) After considering the plaintiff's statements, medical records, and the opinions of other doctors, the ALJ found Dr. Beth's opinions to be more consistent with the record as a whole. (Tr. at 23.) Given the differences in several answers provided to Dr. Rogers by the plaintiff when compared to the rest of the record, the ALJ had good cause to give no significant weight to the opinion of Dr. Rogers and the GAF score that derived from the plaintiff's statements. (Tr. at 22.)

The most notable change in the medical record between the two CEs was that the plaintiff relapsed into cocaine abuse, and the ALJ took note of this. (Tr. at 21.) If a claimant is disabled and drug or alcohol abuse is a material factor contributing to the disability, she is not entitled to benefits based on this consideration. 20 C.F.R.

§ 404.1535, § 416.935 (2011).

In August 2007, Plaintiff tested positive for cocaine, which caused Dr. Record to discontinue prescribing Lortab to the Plaintiff. (Tr. at 218.) In December of 2008, the ER made note of recent cocaine use. (Tr. 216.) In January 2009, Plaintiff told Dr. Rogers she had last used cocaine one week before their meeting and had last used marijuana two to three weeks earlier. (Tr. at 205.) The ALJ considered these facts when assessing the Plaintiff's claims. (Tr. at 22.)

The ALJ used the correct standard of "good cause" to determine whether to disregard Dr. Rogers' January 2009 assessment of Plaintiff's condition, and the ALJ had good cause to afford little weight to Dr. Rogers 2009 assessment of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159-60; *see also Phillips*, 357 F.3d at 1240-41.

IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Norris's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 26th day of June 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

167458